# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UMB BANK, NATIONAL ASSOCIATION, as Indenture Trustee under Trust Indenture dated February 1, 2007, | ) ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | Case No. 13 C 2247 |
| v. | ) ) | |
| LEAFS HOCKEY CLUB, INC., | ) ) | |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On May 31, 2013, Plaintiff Wells Fargo Bank,[1] as Indenture Trustee under the Trust Indenture dated February 1, 2007, filed a two-count First Amended Complaint against Defendant Leafs Hockey Club, Inc. (the "Club") alleging a breach of contract claim (Count I) and a contractual indemnity claim (Count II). On December 17, 2013, the Club filed a three-count Counterclaim against the Trustee alleging a breach of contract claim (Counterclaim I), an equitable accounting claim (Counterclaim II), and a conspiracy to defraud claim (Counterclaim III). After the Court ruled on the Trustee's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the remaining Counterclaims include the Club's breach of contract and equitable accounting claims.

Before the Court is the Trustee's motion for summary judgment under Rule 56(a) as to Count I of the First Amended Complaint and Counterclaims I and II. For the following reasons,

---

[1] On January 24, 2014, the Court granted Plaintiff's motion to substitute UMB Bank, N.A. as Plaintiff/Trustee in this case. (R. 52.)

the Court grants the Trustee's summary judgment motion. Further, because the Court addressed the Club's arguments regarding the Trustee's Rule 56.1 Statements of Fact in the context of each factual dispute, the Court denies the Club's motion to strike as moot.[2] The Trustee's motion to prove up its damages, including the principal, interest, fees, and other amounts owed by the Club due to its breach of the Guaranty Agreement, along with the supporting documentation and citations to relevant sections of the Trust Indenture, Guaranty Agreement, and/or Loan Agreement, is due on or before March 16, 2015. The Club's response is due on or before March 30, 2015. The Trustee's reply, if any, is due on April 6, 2015. After reviewing the parties' submissions, the Court will decide whether an evidentiary hearing on damages is necessary.

## BACKGROUND

### I.  Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting

---

[2] Instead of filing a separate motion to strike and presenting the motion to the Court as required by Northern District of Illinois Local Rule 5.3, the Club brought its motion to strike in its Rule 56.1(b)(3)(B) Response to Plaintiff's Local Rule 56.1(a)(3) Statement of Facts.

2

materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632. With these standards in mind, the Court turns to the relevant facts underlying this lawsuit.

## II.  Relevant Facts

Plaintiff UMB Bank, N.A. is the successor trustee ("Trustee" or "UMB") under the Trust Indenture between the Illinois Finance Authority and the Prior Trustee dated February 1, 2007 ("Trust Indenture"). (R. 113, Pl.'s Rule 56.1 Stmt. Facts ¶ 1.) In accordance with Sections 8.8 and 8.9 of the Trust Indenture and pursuant to an Instrument of Removal of Trustee and Appointment of Successor Trustee effective September 1, 2009, Amalgamated Bank of Chicago was removed as original Trustee and Wells Fargo Bank, N.A. was appointed as successor Trustee. (*Id.* ¶ 2.) On December 5, 2013, Wells Fargo was removed as Trustee and UMB was contemporaneously appointed as successor Trustee pursuant to the Trust Indenture. (*Id.* ¶ 3.)

On November 8, 2006, the Club established LHC, LLC ("LHC") to build, own, and operate a hockey rink in West Dundee, Illinois (the "Rink"). (*Id*. ¶ 4; R. 123, Def.'s Rule 56.1 Stmt. Add'l Facts ¶ 2.) The Club is an Illinois not-for-profit organization that is a youth hockey club run out of West Dundee. (Pl.'s Stmt. Facts ¶ 5.) The Club is the sole member of LHC. (*Id*.) To secure funds to build the Rink, LHC entered into the Loan Agreement with the Illinois Finance Authority on February 1, 2007. (*Id*. ¶ 8.) The Illinois Finance Authority issued $20,000,000 in bonds under the Trust Indenture, the proceeds of which were loaned to LHC for the construction and operation of the Rink. (*Id.* ¶ 9.) The bonds consisted of four different series maturing in different years with different rates of interest. (Def.'s Stmt. Facts ¶ 4.) Pursuant to the Loan Agreement and the February 1, 2007, Guaranty Agreement ("Guaranty Agreement"), LHC was the borrower and the Club was the guarantor. (Pl.'s Stmt. Facts ¶ 8, Pl.'s Ex. E., Loan Agmt.) Michael Durkin, the Club President, signed the Guaranty Agreement on behalf of the Club. (*Id*. ¶ 14.)

Under the Loan Agreement, LHC was required to make payments semi-annually, specifically, on March 1 and September 1 of each year. (Def.'s Stmt. Facts ¶ 7.) LHC failed to make payments as required by the Loan Agreement in March 2010, September 2010, and September 2012. (Pl.'s Stmt. Facts ¶¶ 20, 24.) On September 19, 2012, and December 27, 2012, the Trustee sent letters of default to both LHC and the Club. (*Id*. ¶ 22.) On February 25, 2013, LHC filed for Chapter 11 bankruptcy protection. (*Id*. ¶ 23.) The bankruptcy proof of claim states that the amount due and owing of principal, interest, and Trustee fees as of April 3, 2013, was $21,052,713.25. (*Id*. ¶ 35.) It is undisputed that the Trustee has demanded that the Club fulfill its obligations under the Guaranty Agreement. (*Id*. ¶ 25.) Further, it is undisputed that the

4

Club has not made any payments pursuant to the Guaranty Agreement. (*Id*. ¶¶ 26, 27, 30.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

**I. Breach of the Guaranty Agreement—Count I**

The parties do not dispute that Illinois law governs this contract dispute. *See Auto–Owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (internal citation and quotation marks omitted). Under Illinois law, a guaranty is a contract, therefore, courts apply the same standards governing the interpretation of contracts when determining breach of guaranty claims. *See JPMorgan Chase Bank, N.A. v. East-West Logistics,*

5

*LLC,* 2014 IL App (1st) 121111 ¶ 31, 9 N.E.3d 104, 115, 380 Ill.Dec. 854, 865 (1st Dist. 2014). In Illinois, "[t]o prevail on a breach of contract claim, a plaintiff must establish the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and damages resulting from the breach." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014). Illinois courts "look to the contract as a whole in interpreting its individual terms, adopting an understanding of the language that is natural and reasonable." *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Group, Inc.,* 762 F.3d 673, 679 (7th Cir. 2014). In other words, "[t]erms of a guaranty which are clear and unambiguous must be given effect as written." *JPMorgan Chase Bank*, 9 N.E.3d at 115.

### A. Breach of the Guaranty Agreement—Count I

The Court first turns to the contract between the Trustee and LHC to determine whether LHC was in default of the Loan Agreement. Viewing the facts and all reasonable inferences in the Club's favor, on February 1, 2007, LHC entered into the Loan Agreement, which is a valid, enforceable contract under Illinois law because the Illinois Finance Authority made an offer to LHC, which LHC accepted in the form of the written, signed Loan Agreement. The consideration was the $20 million in loan proceeds and LHC's agreement to repay the loan with interest. LHC failed to make complete and timely payments in March 2010, September 2010, and September 2012.

Section 10.1 of the Loan Agreement sets forth the events of default, which include "failure by the Borrower to make any other payment required by Section 7.1 hereof for the payment of the Bonds when the same shall become due and payable...." (R. 113-5, Ex. E, Loan Agmt.) Section 7.1 states in pertinent part that the "Borrower shall repay the Loan in accordance

6

with the provisions of this Loan Agreement...." (*Id.*)

Accordingly, under the terms of the Loan Agreement, LHC was in default for failing to make timely payments for the principal and interest on the bonds. Indeed, LHC's Operating Manager and the Club's current President admitted in LHC's Chapter 11 bankruptcy proceedings that LHC was in default. (R. 113-11, Ex. K, Bankr. Tr., at 835-86.) The Court therefore turns to the Guaranty Agreement between the Trustee and the Club to determine whether the Club has breached the Guaranty Agreement as alleged in Count I of the First Amended Complaint.

It is undisputed that the Club executed the Guaranty Agreement with the Trustee on February 1, 2007. Relevant sections of the Guaranty Agreement include the following:

> Section 2. The Guaranty. The Guarantor hereby absolutely, unconditionally and irrevocably, guarantees, as a principal obligor and not as a surety, to the Trustee the full and prompt payment, from Guarantor's Funds, of the Bonds when due (whether at a stated maturity or earlier by reason of acceleration or otherwise) and the performance of all of Borrower's Obligations under the Loan Documents.
>
> Section 3. Loss Indemnification. Guarantor shall be liable to the Trustee to the extent of damage, loss, cost or expense incurred by the Trustee arising from or relating to ... (ix) the filing by Borrower or Guarantor of any petition under any section or chapter of the United States Bankruptcy Code.
>
> Section 4. Continuing Guaranty. The Guaranty is an absolute, present, irrevocable, unconditional and continuing guaranty of the Obligations and not collection, and Guarantor shall not be released in whole or in part, by any action or thing which might, but for this provision of this Guaranty, be deemed a legal or equitable discharge of a surety or guarantor.... The Guarantor hereby expressly waives ... (f) any and all defenses of the Borrower pertaining to the Obligations.
>
> Section 11. Bankruptcy of the Borrower. The Guarantor expressly agrees that the liabilities and obligations of the Guarantor under this Guaranty shall not in any way be impaired or otherwise affected by the institution by or against the Borrower.
>
> Section 12. Costs and Expenses. The Guarantor expressly agrees to pay or reimburse the Trustee on demand for all out-of-pocket expenses (including in each case all reasonable fees and expenses of counsel) incurred by the Trustee

7

> arising out of or in connection with the enforcement of this Guaranty against the Guarantor or arising out of or in connection with any failure of any Guarantor to fully and timely perform the obligations of the Guarantor hereunder.

(Pl.'s Stmt. Facts ¶ 17, R. 113-4, Ex. D, Guaranty Agmt.)

The parties do not dispute that the Guaranty Agreement is a valid and enforceable contract and that the Trustee performed its obligations under the Loan and Guaranty Agreements. Therefore, the Court must determine whether the Club breached the terms of the Guaranty Agreement and whether damages resulted from the Club's breach. As stated above, pursuant to Section 2 of the Guaranty Agreement, the Club unconditionally guaranteed the full and prompt payment of the bonds when they became due and the performance of all of Borrower's Obligations under the Loan Documents.

Construing the facts and all reasonable inferences in the Club's favor, it is undisputed that the Club did not make any payments to the Trustee after the Trustee sent the Club a letter of default and accelerated the principal and outstanding interest on the Loan Agreement on December 27, 2012. (Pl.'s Stmt. Facts ¶¶ 26, 30; R. 113-10, Ex. J, 12/27/2012, Notice of Acceleration of Indebtedness.) Moreover, there is uncontested evidence in the record—including, the proof of claim for over $20 million in LHC's bankruptcy action, the Trustee's demand letters, and the monthly account statements—that there are money damages resulting from the Club's breach. As such, the Trustee has met its burden of establishing the Club's breach of the Guaranty Agreement as a matter of law.

In response to the Trustee's summary judgment motion, the Club does not argue that it made the required payments under the Guaranty Agreement or that there are no damages. Instead, the Club takes issue with the Trustee's calculations of the accrued unpaid interest and

8

Trustee's fees. These arguments, however, do not vitiated the undisputed fact that the Trustee has suffered money damages as a result of the Club's failure to make the required payments under the Guaranty Agreement. In short, the Club's argument does not go to its liability, but to the exact amount of damages attendant to its breach. *See Kirkpatrick v. Strosberg,* 385 Ill.App.3d 119, 130, 894 N.E.2d 781, 792, 323 Ill.Dec. 755, 766 (2d Dist. 2008) (in breach of contract claim, absolute certainty with regard to damages is not required to establish liability). Therefore, the Club's argument does not defeat summary judgment on Count I.

### B. Counterclaim I and Affirmative Defenses[3]

#### 1. Failure to keep adequate books and records

The Club's third affirmative defense alleges that the Trustee failed to keep adequate books and records. Because the Club's Counterclaim I is based on the Trustee's breach of the Trust Indenture's obligation to keep "proper books of record and account," the Court addresses both Counterclaim I and the Club's third affirmative defense in tandem.

In Counterclaim I, the Club argues that Trustee breached Article 6.2 of the Trust Indenture, which states in relevant part:

> The Trustee shall keep, or cause to be kept, proper books of record and account in which complete and accurate entries shall be made of all funds and accounts established by or pursuant to this Indenture, which shall at all reasonable times, upon reasonable notice, be subject to the inspection by the Authority or the owners (or a designated representative thereof) of not less than ten percent (10%) in aggregate principal amount of the Bonds then outstanding.

(R. 113-6, Trust Indenture § 6.2(b).)

---

[3] The Club has withdrawn its affirmative defenses numbers one, two, four, six, and seven.

9

Here, the Club posits that it has been confronted with a practical disadvantage because the company that managed the Rink, namely, CSCG, allegedly destroyed the Club's and CSCG's computer and other records when the Club terminated CSCG's management contract in February 2013. As such, the Club contends that it has asked the Trustee and predecessor Trustee, Wells Fargo, to produce the records of accounts to show the status of the four bonds at issue. Further, the Club explains that Wells Fargo has a computer program used to access the data on the bonds and that this information and data is a "document" within the meaning of Federal Rule of Civil Procedure 34 for discovery purposes. In addition, the Club contends that this document "apparently has not been made available to the Club, and [the Trustee] does not make use of such a document in its motion." (R. 119, Resp. Brief, at 2.) The Club thus bases its books and records claim, in part, on the Trustee's failure to turn over this "document."

The Club's focus is misplaced because it incorporates a purported discovery dispute into the Trustee's obligation to keep accurate books of record and also bases the alleged breach of this obligation on speculation regarding how the Trustee's computer program works and generates the bond account statements. (*See* Def.'s Stmt. Facts ¶¶ 14, 15, 32.) The Club's speculation does not create a material factual dispute for trial. *See Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014) ("speculation, hunches and intuition cannot defeat summary judgment"). Furthermore, the Club's argument that it has not received any statements regarding the accounts showing the disposition of bonds is refuted by testimony of the Club's and LHC's officers stating that they received the monthly accounts statements on the bond accounts. (Pl.'s

Stmt. Facts ¶¶ 29, 35.)[4] The Court also notes that pursuant to Section 9.4 of the Loan Agreement, both LHC and the Club were also required to keep proper books and records in accordance with generally accepted accounting principles.[5] Therefore, any remedy based on CSCG's alleged destruction of the Club's and CSCG's records does not necessarily lie with the Trustee.

Even if the Club had presented evidence raising a genuine dispute of material fact for trial that the Trustee breached 6.2 of the Trust Indenture, the Club has failed to present any evidence of damages as a result of the Trustee's alleged breach. *See Celotex,* 477 U.S. at 322 ("plain language of Rule 56[a] mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Because the Club has failed to raise a genuine issue of material fact as to the elements of its breach of contract claim, the Court grants the Trustee's summary judgment motion as to Counterclaim I.

The Club's books and records affirmative defense fails for these same reasons and also because the Club expressly waived "any and all defenses of the Borrower pertaining to the Obligations" in Section 2 of the Guaranty Agreement. *See Bank of Am., N.A. v. 108 N. State*

---

[4] Although the Club's current President, Rajindar Grewal, testified at his July 2014 deposition that the Club has received the monthly statements on the bond accounts, his later-filed affidavit states otherwise. It is well-settled, however, that a party cannot "create an issue of material fact by submitting an affidavit that contradicts an earlier deposition." *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 759 (7th Cir. 2006).

[5] Barron's Dictionary of Accounting Terms defines "generally accepted accounting principles ("GAAP")" as "standards, conventions, and rules accountants follow in recording and summarizing transactions, and in the preparation of financial statements." Barron's Dictionary of Accounting Terms, 228 (6th ed. 2014).

11

*Retail LLC,* 401 Ill.App.3d 158, 172, 340 Ill.Dec. 323, 928 N.E.2d 42 (1st Dist. 2010) ("a decision by a party to contractually agree to waive all defenses is permitted under Illinois law"); *General Elec. Bus. Fin. Servs., Inc. v. Silverman*, 693 F.Supp.2d 796, 800 (N.D. Ill. 2010) (guaranty agreement enforceable even if it "contains broad statements of guarantor liability, including waivers of all defenses."). Because the Club waived "any and all defenses," the Club's third affirmative defense is without merit.

### 2. Breach of covenant of implied duty of good faith and fair dealing

Putting aside the Club's waiver of its affirmative defenses and for the sake of completeness, the Court turns to the Club's fifth affirmative defense, namely, breach of the implied duty of good faith and fair dealing in the context of the Trustee's alleged acquiescence to LHC not paying pay property taxes during the pendency of its tax appeal. Under Illinois law, implicit in every contract is the duty of good faith and fair dealing. *See Wilson v. Career Educ. Corp.,* 729 F.3d 665, 673 (7th Cir. 2013) (per curiam); *JPMorgan Chase Bank*, 9 N.E.3d at 118. "The duty of good faith requires 'the party vested with contractual discretion to exercise it reasonably, and he may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties.'" *JPMorgan Chase Bank*, 9 N.E.3d at 118 (citation omitted). "The obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law, but does not create an independent cause of action." *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013). In other words, "[t]his doctrine is a rule of construction, not a stand-alone obligation." *In re Kmart Corp.,* 434 F.3d 536, 542 (7th Cir. 2006); *see also Zeidler v. A & W Rests., Inc.,* 301 F.3d 572, 575 (7th Cir. 2002) ("The covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law.").

Not only is it undisputed that it was LHC, and not the Trustee, that decided not to pay the property taxes during the tax appeal,[6] the parties do not argue that the relevant contractual language is ambiguous, and thus the implied duty of good faith and fair dealing as a rule of contract construction is not relevant to the Court's analysis. *See In re Kmart Corp.*, 434 F.3d at 542. Hence, the Club's fifth affirmative defense does not defeat summary judgment. *See McArdle,* 705 F.3d at 755 ("obligation of good faith and fair dealing" does not "permit a party to enforce an obligation not present in the contract").

## II.     Equitable Accounting Claim—Counterclaim II

In its Counterclaim II, the Club brings an equitable accounting claim against the Trustee. "An accounting is appropriate if a legal remedy would be inadequate." *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.,* 353 F.3d 541, 545 (7th Cir. 2003). In the context of an equitable accounting claim under Illinois law, "[i]n addition to the absence of an adequate remedy at law, the plaintiff must allege at least one of the following: (1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature." *Kempner Mobile Elec., Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005) (citing *Mann v. Kemper Fin. Co., Inc.,* 247 Ill.App.3d 966, 980, 618 N.E.2d 317, 187 Ill.Dec. 726 (1st Dist.1992)). "[A]n order for an accounting is within the court's discretion, and the right to an accounting is not absolute." *Newton v. Aitken,* 260 Ill.App.3d 717, 722, 633 N.E.2d 213, 218, 198 Ill.Dec. 751, 756 (2d Dist. 1994); *see also ABM Marking, Inc.,* 353 F.3d at

---

[6] Although the Club disputed this fact in response to the Trustee's Rule 56.1 Statement of Facts, the Club failed to cite evidence in the record supporting its denial. The Court therefore deems the Trustee's factual statement as admitted. *See* Fed.R.Civ.P. 56(e)(2).

545 ("district court has 'broad discretion' in deciding whether an accounting is appropriate").

Assuming there is an absence of an adequate remedy at law, the Court turns to the other factors required to establish the need for an equitable accounting. In its response brief, the Club focuses on the "existence of mutual accounts which are of a complex nature" requirement. Courts have defined such complex accounts as so "complicated as to be beyond the comprehension of a trier of fact." *National Serv,. Ass'n, Inc. v. Capitol Bankers Life Ins. Co., Inc.*, 832 F.Supp. 227, 231 (N.D. Ill. 1993). In short, a party must show that "the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." *Kempner Mobile Elec.*, 428 F.3d at 715 (citing *Zell v. Jacoby-Bender, Inc.,* 542 F.2d 34, 36 (7th Cir. 1976)); *see also Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

Here, the Club argues that the accounts are complicated because the bonds consist of four different series maturing in different years with different rates. Also, the Club comments that the bonds at issue have more "moving pieces" than a mortgage loan. The Club's arguments do not meet the standard for complexity under the circumstances, namely, that "only a court of equity can satisfactorily unravel" these accounts. *See Kempner Mobile Elec.*, 428 F.3d at 715; *see also Oil Exp. Nat'l, Inc. v. Latos,* 966 F.Supp. 650, 652 (N.D. Ill. 1997) ("The need to examine [plaintiff's] business records is not a sufficient justification for an equitable accounting"). As such, the Court, in its discretion, denies the Club's request for an equitable accounting.

The better solution is for the Trustee to prove up the exact amount owed by the Club due to its breach of the Guaranty Agreement, which the Trustee has failed to do in its summary judgment filings. Specifically, the Trustee's cursory attempt to show the damages amount in a

14

footnote in its Rule 56.1 Statement of Facts provides an insufficient basis for the Court to award the specific amount of damages. While it is uncontested that the Trustee has suffered damages, the specific amount is unclear. Accordingly, the Trustee must file a motion to prove up its damages, including the principal, interest, fees, and other amounts owed by the Club due to its breach of the Guaranty Agreement, along with the supporting documentation and citations to relevant sections of the Trust Indenture, Guaranty Agreement, and/or Loan Agreement, by March 16, 2015. The Club's response to the motion is due on March 30, 2015. The Trustee's reply, if any, is due on April 6, 2015. After reviewing the parties' submissions, the Court will decide whether an evidentiary hearing on damages is necessary.

The Court therefore grants the Trustee's summary judgment motion as to Counterclaim II because the Club did not establish a genuine issue of material fact as to the necessary elements for the equitable remedy of an accounting under Illinois law. *See Sterk v. Redbox Automated Retail, LLC,* 770 F.3d 618, 627 (7th Cir. 2014) ("summary judgment is proper against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.'") (citation omitted).

## CONCLUSION

For these reasons, the Court grants Plaintiff's motion for summary judgment and denies Defendant's motion to strike as moot. The Trustee's motion to prove up its damages is due on or before March 16, 2015. The Club's response is due on or before March 30, 2015. The Trustee's reply, if any, is due on April 6, 2015.

**Dated:** March 2, 2015

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**

15