# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UMB BANK, NATIONAL ASSOCIATION, as Indenture Trustee under Trust Indenture dated February 1, 2007, | )<br>)<br>) |
| Plaintiff/Counter-Defendant, | )<br>) Case No. 13 C 2247 |
| v. | )<br>) |
| LEAFS HOCKEY CLUB, INC., | )<br>) |
| Defendant/Counter-Plaintiff, | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On March 2, 2015, the Court granted Plaintiff/Trustee UMB Bank, N.A.'s (the "Trustee") motion for summary judgment against Defendant Leafs Hockey Club, Inc. (the "Club") based on the Club's breach of the parties' Guaranty Agreement.[1] In the March 2, 2015, Memorandum, Opinion, and Order, the Court directed the Trustee to file a motion to prove up damages, including the exact amount of principal, interest, and fees owed by the Club due to its breach of the Guaranty Agreement. The Trustee's motion to prove up damages is now before the Court.

For the following reasons, the Court grants the Trustee's motion and awards the Trustee damages as discussed below. The Trustee must file a proposed judgment order, including the calculation of the interest due as of today, May 11, 2015, with the Court by no later than May 13, 2015. In addition, the parties must follow the local procedures under Northern District of Illinois Local Rule 54.3 regarding attorney's fees, including the requirement to "confer and attempt in

---

[1] The Court presumes familiarity with its March 2, 2015, Memorandum, Opinion, and Order granting the Trustee's summary judgment motion.

good faith to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee motion." *See* N.D. Ill. L.R. 54.3(d).

## BACKGROUND

As discussed in the Court's March 2015 summary judgment ruling, the Trustee established that there were no genuine issues of material fact that the Club's breach of the Guaranty Agreement caused over $20 million in damages. In the present motion, the Trustee seeks as damages: (1) $20 million in principal; (2) $4,326,123.63 in unpaid interest, which is continuing to accrue daily as simple interest at a per diem rate; and (3) $9,854.50 in Trustee's fees, which are also continuing. In support of the present motion, the Trustee sets forth the affidavit of Virginia Housum, a Senior Vice President and Workout Specialist in the Corporate Trustee Department at UMB. (R. 136-1, Housum Aff. ¶ 2.) Housum is the individual principally responsible for determining the best mechanisms for collecting on the loan at issue in this lawsuit, ascertaining and calculating the unpaid amounts due, and ensuring repayment of debt service on the loan. (*Id.* ¶ 3.)

It is undisputed that the Illinois Finance Authority issued $20 million in bonds, the proceeds of which were loaned to LHC, LLC ("LHC") under the Loan Agreement. Under the Loan Agreement and the Guaranty Agreement, LHC was the borrower and the Club was the guarantor. The bonds at issue consisted of four different series maturing in different years with different rates of interest. Following LHC's default, the Trustee sent notices of acceleration and filed a proof of claim in LHC's bankruptcy case reflecting the full $20 million in bond proceeds as outstanding. Despite guarantying repayment, the Club has never made any payments pursuant to its obligations under the Guaranty Agreement.

Although it is undisputed that the damages at issue amounted to over $20 million, because the exact amount of damages resulting from the Club's breach was not readily determinable from the parties' summary judgment submissions, the Court directed the Trustee to file a motion as follows: "The Trustee's motion to prove up its damages, including the principal, interest, fees, and other amounts owed by the Club due to its breach of the Guaranty Agreement, along with the supporting documentation and citations to relevant sections of the Trust Indenture, Guaranty Agreement, and/or Loan Agreement, is due on or before March 16, 2015." (R. 125, Mem, Order, & Op., at 2.) The Court requested the supporting documentation and citations to the relevant contracts because the parties' summary judgment Local Rule 56.1 Statements of Facts and Responses were confusing and incomplete, especially regarding the calculation of fees and interest. *See Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (district courts have considerable discretion in applying local rules). Nevertheless, the Club asked for leave to file a Rule 56.1 Statement of Facts in response to the present motion, which the Court granted. Many of the Club's newly-filed Rule 56.1 Statements reiterate the facts underlying the breach of contract claim, as well as the Club's affirmative defenses and equitable accounting claim. Any such statements and the attendant arguments regarding liability are irrelevant to the Court's present analysis. That being said, the remainder of the Club's Rule 56.1 Statement of Facts are helpful to the Court's determination of the damages due and owing.

## LEGAL STANDARD

Under Illinois law, which governs this contract dispute, "[t]he measure of damages for breach of contract is the amount that will compensate the aggrieved party for the loss 'which either fulfillment of the contract would have prevented or which the breach of it has entailed.'"

3

*Santorini Cab Corp. v. Banco Popular N. Am.,* 2013 IL App (1st) 122070, 999 N.E.2d 46, 52, 376 Ill.Dec. 403 (1st Dist. 2013) (citation omitted). Also under Illinois law, plaintiffs have the burden of "establishing both the correct measurement of damages and the final computation of damages based on that measurement." *Dynegy Mktg. & Trade v. Multiut Corp.,* 648 F.3d 506, 518 (7th Cir. 2011) (quoting *Ollivier v. Alden,* 262 Ill.App.3d 190, 199 Ill.Dec. 579, 634 N.E.2d 418, 422 (2d Dist. 1994)). Plaintiffs, however, "are not required to prove damages to the exact cent; they must merely establish a 'reasonable basis for computing damages.'" *Dynegy Mktg,* 648 F.3d at 518 (quoting *Razor v. Hyundai Motor Am.*, 222 Ill.2d 75, 305 Ill.Dec. 15, 854 N.E.2d 607, 626 (Ill. 2006)).

## ANALYSIS

In support of the present motion, the Trustee filed Housum's affidavit, which details the basis and calculation of damages the Club owes based on Housum's personal knowledge and the attendant documentary evidence. Moreover, Housum's two-day deposition transcript explaining the measurement and calculation of damages is part of the district court record. Since August 2009, Housum has been the individual principally responsible for acting on behalf of the bondholders to determine the best mechanisms for collecting on the loan, ascertaining and calculating the unpaid amounts due, and ensuring repayment of debt service on the loan. (Housum Aff. ¶¶ 2, 3.) Housum specifically avers that in preparation of her affidavit, she reviewed UMB's file relating to this matter, along with documents posted on the Electronic Municipal Market Access ("EMMA") website maintained by the Municipal Securities Rulemaking Board that the United States Securities and Exchange Commission supervises. (*Id.* ¶¶ 4, 5.) Other documents Housum relied upon included UMB's Transfer Agency Forms and

4

Wells Fargo's Notices of Partial Payment of Interest. (R. 142-1, Housum Supp. Aff. ¶¶ 5, 6.) Further, Housum reviewed this documentation in the context of the Limited Offering Memorandum, which delineates the debt service schedule for the bonds. (Housum Aff. ¶ 9.)

## I. Amount of Principal Due

The Trustee maintains that based on the publically available records of the four separate series of bonds, as well as the transfer agency forms submitted by the former Trustee (Wells Fargo) and the current Trustee (UMB),[2] the full amount of principal, namely, $20 million, is still due and owing. Although there is no dispute that the loan was in the amount of $20 million, the Club takes issue with the $20 million in principal due and owing stating that "LHC made one semiannual bond payment in full." (R. 140, Club's Rule 56.1 Stmt. Facts ¶ 8.) In support of this statement, the Club relies on Housum's deposition transcript, but misstates her testimony. To clarify, at her deposition, Housum testified that LHC made one loan payment, but that this payment only covered interest on the loan and did not go to the loan's principal. (R. 146, Housum Dep., at 82, 169, 170, 174-75; Housum Aff. ¶ 13.) The Club attempts to refute Housum's testimony and affidavit, which establish that the entire amount of principal remains due, by focusing on the admissibility of the documents Housum relied upon in making her determination. Specifically, the Club argues that the Depository Trust Company's ("DTC") transfer documents, EMMA documents, and Wells Fargo's Notices of Partial Payment of Interest are inadmissible hearsay and lack authentication.

---

[2] On January 24, 2014, the Court granted Plaintiff's motion to substitute UMB Bank, N.A. as Plaintiff/Trustee in this case. (R. 52.)

The loan documents, namely, the notices of partial payment, are admissible pursuant to the business records exception, especially in tandem with Housum's affidavit and supplemental affidavit explaining how these documents were made and maintained, as discussed in detail below. *See Melendez-Diaz v. Mass*., 557 U.S. 305, 321, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) ("Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status."); *see, e.g., Achey v. BMO Harris Bank, N.A.,* ___ F.Supp.3d ___, 2014 WL 4099139, at *4 (N.D. Ill. 2014) (loan documents "plainly are admissible pursuant to the business records exception set fort in Rule 803(6)."). Turning to the EMMA and DTC documents, EMMA "serves as the official source for municipal securities disclosures and related market data" providing "on-line access to centralized new issue municipal securities disclosure documents (known as official statements)" and the "DTC is a member of the U.S. Federal Reserve System, and a registered clearing agency with the Securities and Exchange Commission."[3] Based on the function and purpose of EMMA and the DTC, the documents Housum relied upon are not inadmissible hearsay because they are business records and market reports. *See* Fed.R.Evid. 803(6) (excepting from hearsay "[r]ecords of regularly conducted activity"); Fed.R.Evid. 803(17) (excepting "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular positions.").

As to the authentication of these documents, Housum, who has personal knowledge of how these systems and banking practices work, has set forth the following statements as to their

---

[3] *See* http://en.wikipedia.org/wiki/Electronic_Municipal_Market_Access (last visited May 11, 2015); http://en.wikipedia.org/wiki/Depository_Trust_&_Clearing_Corporation (last visited May 11, 2015).

authenticity. *See United States v. Cejas,* 761 F.3d 717, 723 (7th Cir. 2014); *see also* Fed.R.Evid. 901(a) (documents are authenticated by evidence "sufficient to support a finding that the matter in question is what its proponent claims."). Housum first avers that Exhibit E is a true and correct copy of UMB's DTC Transfer Agency Change Form effective date January 27, 2014, signed by Laura Roberson, UMB Vice President. (Housum Supp. Aff. ¶ 5; Housum Dep., at 168-69.) She further asserts that Exhibit F is a true and correct copy of Wells Fargo's DTC Transfer Agency Change Form and related swing letters, effective date January 27, 2014, and that she has personal knowledge of the procedures under which these documents were made and maintained and kept in the course of ordinary and usual business at both Wells Fargo and UMB. (Housum Supp. Aff. ¶ 5; Housum Dep., at 161-62.) Also, she states that the documents were made at or near the time of the events recorded therein and were created by individuals with knowledge or from information transmitted by a person with knowledge and who reported that knowledge in the regular course of business. (Housum Supp. Aff. ¶ 5.)

In her supplemental affidavit, Housum further avers that Exhibit G is a true and correct copy of Notices of Partial Payment of Interest dated March 1, 2010; Notices of Partial Payment of Interest dated September 1, 2010; Notices of Partial Payment of Interest dated March 1, 2011; Notices of Partial Payment of Interest dated September 1, 201l; Notices of Partial Payment of Interest dated March 1, 2012; and Notices of Partial Payment of Interest dated August 31, 2012. (*Id.* ¶ 6.) She states that she has personal knowledge of the procedures under which these documents were made and maintained and that it has been her practice to draft these notices each and every time a payment or partial payment was made toward the bonds. (*Id.*) In addition, she avers that the notices were posted on EMMA's website and testified that UMB independently

7

maintained the data posted on EMMA's website. (*Id.*; Dep. at 11-13, 177-78.) Further, she states that these documents are routinely made and kept in the course of ordinary and usual business at Wells Fargo and that the documents were made at or near the time of the events recorded. (Housum Supp. Aff. ¶ 6.) Again, she asserts that the documents were created by individuals with knowledge or from information transmitted by a person with knowledge and who reported that knowledge in the regular course of business, and that it was her regular practice to make such documents. (*Id.*)

Moreover, the Club's arguments based on what the Trustee did or did not produce during discovery do not save the day, especially because the fact discovery deadline has long since passed, and the Club had the opportunity to take Housum's deposition testimony on two separate occasions, July 1, 2014 and July 16, 2014. At her deposition, Housum answered all of counsel's questions based on her personal knowledge and as a workout specialist. The Club's argument that Housum did not answer the fundamental questions about the amount due and owing under the Loan Agreement is belied by her detailed deposition testimony, which included answering counsel's specific questions that walked Housum through the amount due and owing in LHC's bankruptcy proof of claim.[4] In addition, counsel had the opportunity to examine Housum further at the continuation of the deposition on July 16, 2014.

---

[4] The Indenture Trustee's Amended Proof of Claim filed on April 3, 2013, indicates that the principal amount due and owing was $20 million. (*See* 13-B-7001, Claim 2-2, Addendum, at 2.) The Court takes judicial notice of the bankruptcy court's docket in *In re LHC, LLC,* 13-7001, which shows that, to date, neither LHC nor the Club have objected to the amounts in the Indenture Trustee's Amended Proof of Claim. *See Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 545 (7th Cir. 2014) (courts "may take judicial notice of publicly available records of court proceedings").

Because Housum relied upon admissible, authenticated documentation in her calculations and had a reasonable basis for computing the principal due and owing, the Club's argument that LHC made one payment that went to the principal amount fails. *See Dynegy Mktg,* 648 F.3d at 518-19. The Trustee has established that the Club owes $20 million in principal. Therefore, the entire amount of principal, namely, $20 million, is due and owing.

## II.     Interest Calculations

Next, the Trustee asserts that the unpaid interest as of March 16, 2015 is $4,326,123.63. In determining the amount of interest due, the Trustee via Housum premised the calculation on the different bond series and interest due. Specifically, the $20 million principal is the aggregate of three series of tax-exempt bonds totaling $18,880,000 designated as "Sports Facility Revenue Bonds, Series 2007A," and one series of taxable bonds totaling $1,120,000 designated as "Sports Facility Revenue Bond, Taxable Series 2007B." (Housum Aff. ¶ 10.) The four series of bonds are identified by their Committee on Uniform Securities Identification Procedures ("CUSIP") numbers provided for the bond issuance. (*Id.* ¶ 11; Housum Dep., at 14-15.) The CUSIP numbers, breakdown of principal amount, and interest rates are as follows:

   CUSIP # 45202UAF1 in the amount of $995,000 at 5.625%

   CUSIP # 45202UAG9, in the amount of $6,063,00 at 5.875%

   CUSIP # 45202UAH7, (taxable) in the amount of $11,820,00 at 6.0%

   CUSIP # 45202UAJ3, in the amount of $1,120,000 at 9.0%

(Housum Aff. ¶¶ 11, 12, 14.) The interest due is calculated on a per diem basis in the amount of $3,395.24 and was further calculated by aggregating the daily interest rate on each of the bonds. (*Id.* ¶ 16; Housum Dep., at 175-76.) The Trustee also took into account LHC's partial payments

9

of interest in the amount of $2,447,386.27 in making the interest calculation. (Housum Aff. ¶ 18.)

In response, the Club first argues that the per diem interest amount of $3,395.24 is in error because LHC made a semiannual bond payment that went to the principal. As discussed above, the Club has failed to refute the Trustee's factual basis and calculation that this payment went to interest alone, therefore, this argument is unavailing. *See, e.g., Dynegy Mktg. & Trade,* 648 F.3d at 519. Next, the Club takes issue with the Trustee's reliance on hearsay documents used in calculating LHC's partial payments of interest in the amount of $2,447,386.27. Again, the Notices of Partial Payment Interests are business records maintained in the normal course of business and authenticated by Housum in her supplemental affidavit, as well as discussed in detail at her deposition. *See* Fed.R.Evid.R. 803(6). The Club's arguments do not refute the Trustee's interests calculations.

Accordingly, as of March 16, 2015, the Club owed $4,326,123.63 in unpaid interest with a daily per diem rate of $3,395.24. The Trustee must calculate the amount of unpaid interest as of today, May 11, 2015, in its proposed judgment order due on or before May 13, 2015.

### III. Trustee Fees

Last, the Trustee contends that the Trustee's fees–as provided by the Guaranty Agreement–amount to $9,854.50. In support of this amount, Housum avers that she reviewed her time-keeping records, which track the fees accrued in her work on behalf of the bondholders in connection with the loan. (Housum Aff. ¶ 21.) In further support of this amount, the Trustee provides the March 16, 2015, UMB account invoice stating that the default specialist billed 16.80 hours at a rate of $510 an hour for a total of $8,568.00. The invoice also bills $340.00 in

"default administrative fees," $833.33 for "administrative fees," and $113.17 in out of pocket expenses. (R. 136-11, Ex. H, 3/16/15, Invoice; Housum Aff. ¶ 23.) In her supplemental affidavit, Housum avers that this amount subtracts the amount LHC has previously paid for Trustee's fees in connection with LHC's bankruptcy. (Housum Supp. Aff. ¶ 8.) Housum also asserts that she has personal knowledge of how the UMB invoice was made and that it is the regular practice for UMB to make such documents. (*Id*. ¶ 7.)

The Club takes issue with the fact that Housum did not attach her time-keeping records to her affidavit and that the Trustee did not turn over her time-keeping records during discovery. Also, the Club argues that the March 2015 UMB invoice does not delineate the exact work Housum performed and on what dates she performed these tasks. In short, the Club is arguing that the documentary evidence supporting the amount of Trustee's fees is not a "reasonable basis for computing damages." It is not entirely clear why Housum did not attach the time-keeping records delineating her tasks. This omission and the invoice's lack of detail, however, do not support the conclusion that the Trustee's basis for these fees is unreasonable, especially because courts resolve any reasonable doubts as to the amount of damages against the wrongdoer. *See MindGames, Inc. v. Western Pub. Co., Inc.*, 218 F.3d 652, 658 (7th Cir. 2000). On a final note, the Court rejects the Club's hearsay and authentication arguments regarding these documents for the same reasons discussed above. Because the Trustee maintains that these fees are continuing, the Trustee must calculate the amount of Trustee's fees as of today, May 11, 2015, and include these fees in its proposed judgment order due on or before May 13, 2015.

## CONCLUSION

The Court grants the Trustee's motion to prove up damages as to the principal, interest, and Trustee's fees. The Trustee's proposed judgment order is due on or before May 13, 2015. The parties must follow the local procedures under Northern District of Illinois Local Rule 54.3 regarding attorney's fees.

**Dated:** May 11, 2015

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**